Betancourt et al. *v.* Rodríguez et al.

Apelación procedente de la Corte de Distrito de San Juan.

No. 569.—Resuelto en enero 10, 1911.

Apelación—Alegato del Apelante—Indicación de Errores.—En los casos en que el alegato del apelante no contuviere una indicación de errores, de acuerdo con las disposiciones de los artículos 42 y 43 del Reglamento del Tribunal Supremo, éste puede concretarse, en la consideración del caso, a aquellos errores que sean fundamentales, a los efectos de la apelación.

Bienes Parafernales—Bienes Gananciales.—El hecho de que una finca adquirida por la esposa, con dinero procedente de su herencia paterna, fuera vendida por ésta y que algún tiempo después comprara otra en unión de su consorte, no es bastante para poder afirmar que esta adquisición se hiciera con sus bienes propios y que tenga el concepto de bien parafernal.

Id.—Adquisición por Documento Privado.—Apareciendo que la finca a que se refiere el caso de autos fué adquirida por ambos esposos constante su matrimonio, tiene que reputarse como perteneciente a la sociedad conyugal, sin que pueda afectar a su carácter de ganancial, la circunstancia de haberse hecho la adquisición por documento privado y que éste se elevara a documento público después del fallecimiento de la esposa, consignándose en él la venta a favor del viudo.

Id.—Disolución de la Sociedad de Gananciales—Dominio del Cónyuge Viudo.— Disuelta la sociedad conyugal por fallecimiento de la esposa, el marido no puede estimarse dueño absoluto de los bienes gananciales, o algunos de ellos, mientras no se verifique la liquidación y partición del haber social, y adquiera, por adjudicación, dominio exclusivo sobre los mismos.

Id.—Tercero.—Tiene el carácter de tercero el que adquiera de persona que, según el registro, aparezca con derecho para trasmitir, y no puede alegar tal carácter el que hubiere adquirido en época en que la finca, no estaba inscrita a favor del vendedor, ni el que tenga conocimiento de que el vendedor adquirió la finca por documento privado constante su matrimonio, siendo por tanto ganancial, habiéndose otorgado el documento público de venta, a su favor, después del fallecimiento de su esposa.

PRUEBAS—DEPOSICIONES—DECLARACIONES CONTRARIAS Á LAS CONTENIDAS EN UN DOCUMENTO PÚBLICO.—En el caso de autos se objetó a la admisión de una deposición por contener declaraciones contrarias a las hechas por el declarante en un documento público, fundándose la objeción en el No. 2 del artículo 101 de la Ley de Evidencia. *Se resolvió* que ese precepto tiene aplicación tan sólo a cuestiones entre partes, y que el declarante no es parte en el pleito, ni fué la deposición ofrecida como prueba por alguno de los que figuraron como partes en el documento público, ni tenía el declarante un interés personal en el contrato objeto del documento público, pues en él compareció como apoderado de una de las partes, por todo lo cual no es de aplicación al caso el precepto citado anteriormente.

ID.—PRUEBA DE UN HECHO ACCESORIO O INCIDENTAL.—La corte tiene facultades para permitir que se investigue en el juicio un hecho accesorio o incidental que estime directamente relacionado con la cuestión discutida y sea necesario esclarecer para su debida resolución.

ID.—ADMISIÓN DE PRUEBA IMPROCEDENTE—PRUEBA DE REFERENCIA—APELACIÓN.— La admisión de una declaración que constituya prueba de referencia y la denegación de una moción solicitando su eliminación, no es error que justifique la revocación de la sentencia, si no se hubieren perjudicado por ello los derechos de la parte, por haber otra prueba suficiente para establecer el hecho sobre que versara la prueba indebidamente admitida.

SENTENCIA—NULIDAD DE ESCRITURAS.—En el caso de autos la corte inferior decretó la nulidad de determinadas escrituras y de sus inscripciones, y el apelante alegó que no habiéndose decretado la nulidad de los contratos contenidos en las mismas, debía sostenerse su validez. *Se resolvió* que la intención evidente de la corte inferior fué decretar la nulidad de los contratos a que dichas escrituras se referían, pues el fundamento de la declaración de nulidad era la falta de derechos de una de las partes para hacer las enajenaciones sobre que aquellos versaban.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Eduardo Cautiño y Jacinto Texidor.*

Abogado de los apelados: *Sr. José G. Torres.*

EL JUEZ ASOCIADO, SR. MACLEARY, emitió la opinión del tribunal.

En estos autos no encontramos ninguna exposición de los errores en que se funda el recurso según las disposiciones de las reglas 42 y 43 del reglamento de esta corte que exigen que dicha exposición esté contenida en el alegato del apelante; por esa razón podríamos limitar la consideración de este caso a aquellos errores que pudieran ser considerados como fundamentales. Sorprende aún más esta omisión porque el abogado de los apelantes en el presente caso ha considerado

como un fundamento importante dicha omisión, para presentar en otro caso una moción que ha tenido éxito, en la que se solicitaba la eliminación del alegato de la parte contraria. Una exposición de errores constituye una ayuda muy esencial para esta corte en el estudio de cualquier caso y nunca debe omitirse en el alegato del apelante.

Pero como no consta de los autos que la parte contraria haya hecho moción alguna y en el alegato de los apelantes se exponen siete "fundamentos legales" por los que se solicita la revocación de la sentencia apelada, los que pueden implícitamente ser considerados como desempeñando el objeto de una *exposición de errores,* examinaremos el caso en la forma en que allí aparece.

En este caso se presentó una demanda en la Corte de Distrito de San Juan por Herminia Vicenta Betancourt *et al.* contra Nicolás Betancourt, Agustín Rodríguez y Francisco del Valle, en la que se alegaba en substancia lo siguiente: Que los demandantes son los únicos y universales herederos de Da. Herminia Rivera; que en el año 1889, Antonio Zechini vendió privadamente a Nicolás Betancourt, padre de los demandantes, cuatro cuerdas de terreno con veinticinco céntimos de otra, situadas en el barrio de Guzmán Abajo, término municipal de Río Grande; que esa compra la verificó Betancourt con dinero propio de su esposa Herminia Rivera, y con dinero también de la misma se construyó en aquélla una casa de madera; que Herminia Rivera falleció con anterioridad al otorgamiento de la escritura del predio descrito; que a la muerte de Zechini Gracia, se adjudicó a sus hijas Josefina, Angela y María, la referida finca, y posteriormente en 15 de marzo de 1907, Antonio Zechini y Veve, como apoderado de dichas señoras, otorgó una escritura de venta de dicha parcela de terreno a favor de Nicolás Betancourt, haciéndose constar la circunstancia de que la venta había sido efectuada con anterioridad al acto del otorgamiento; al siguiente día Betancourt vendió á Francisco del Valle tres cuerdas de terreno procedentes de dicha finca, vendiendo éste también el

propio día las tres cuerdas mencionadas a Agustín Rodríguez; que el 17 de julio de 1907, Betancourt vendió a Rodríguez una cuerda y un cuadro de terreno sobrante y la casa
que era lo que quedaba de la finca; que al verificarse estas
ventas, los compradores del Valle y Rodríguez conocían la
procedencia de esos terrenos y casa, que habían sido adquiridos en vida de Herminia Rivera y con dinero propio de ésta.
Y se pidió a la corte que declarara que las cuatro cuerdas y
un cuadro y la casa, son de la exclusiva pertenencia de los demandantes por herencia de su madre Sra. Herminia Rivera,
y que Don Nicolás Betancourt sólo tiene en ellas el usufructo
legal; que las ventas realizadas por Betancourt y del Valle
respecto de la finca descrita, son nulas, siendo igualmente
nulas las escrituras e inscripciones por ellos presentadas, y
además, que en el caso de no ser bienes propios de Da. Herminia Rivera el terreno y casa vendidos, dicha propiedad no
se enajenará sin liquidar los bienes de la sociedad conyugal;
y que se condene en costas a los demandados.

Solamente el demandado Agustín Rodríguez presentó su
contestación a la demanda, negando en la misma las alegaciones esenciales contenidas en la demanda con relación a la
compra hecha de la finca por virtud de un contrato privado,
y que dicha venta se efectuó con dinero de Doña Herminia
Rivera, alegando además en su contestación, que es cierto que
por virtud de las escrituras públicas de 16 de marzo y 17 de
julio, 1907, él había comprado a Francisco del Valle tres
cuerdas de terreno, y a Don Nicolás Betancourt una cuerda y
un cuarto, y una casa, adquiriendo dichas fincas por precio
cierto, y libre de toda carga y gravámenes, y de sus únicos y
exclusivos dueños, según sus títulos de dominio; alegando
además, que aún cuando fuera cierto el contrato privado de
que se habla en la demanda, este demandado nada tiene que
ver con el mismo, del que nada sabía; y que ese contrato no
se hizo constar en la escritura.

La corte inferior dictó sentencia a favor de los demandantes, declarando:

"1. Que pertenece a la sociedad conyugal de Nicolás Betancourt y Herminia Rivera la siguiente finca: predio de terreno compuesto de cuatro cuerdas veinte y cinco céntimos de otra, más o menos, sitas en el barrio de Guzmán, del término municipal de Río Grande, equivalentes a una hectárea, cuarenta y siete áreas y cuatro centiáreas, en lindes por el norte con Don Ramón Pérez Villamil; por el sur con la carretera que conduce a Río Grande; por el este con la misma carretera, y por el oeste con el vértice al triángulo que forman las dos líneas de la carretera en colindancias con Don Ramón Pérez Villamil y finca denominada "Flores" que perteneció a Don Valentín Flores.

"2. Que son nulas las escrituras por las que Nicolás Betancourt vendió a Agustín Rodríguez y a Francisco del Valle parte de esa finca y también por la que éste vendió a Agustín Rodríguez una porción de su compra.

"3. Que deben cancelarse en el registro los asientos que estas compras han producido.

"4. Que los demandados paguen las costas."

En el juicio, que fué celebrado el día 19 de Abril de 1910, la prueba estableció los siguientes hechos:

1. Los demandantes son hijos y herederos de Da. Herminia Rivera Correa que fué casada con el demandado Nicolás Betancourt García.

2. Que durante el matrimonio recibió la esposa por documento público de manos de su hermano Don Felipe Rivera Correa, la cantidad de trescientos cincuenta pesos que le correspondieron por herencia de su padre Don Felipe Rivera Romero.

3. Que al día siguiente de ese recibo, o sea en 23 de mayo de 1885, dicha señora asistida de su esposo, compró una finca a su hermano Don Felipe por precio de setecientos pesos, de los cuales se dió por pagado este señor en la siguiente forma: trescientos cincuenta pesos de la herencia paterna que le ha-

bía entregado el día antes y los otros trescientos cincuenta pesos en ganado vacuno que existía en poder del vendedor y procedía de dádivas que a la compradora habían hecho sus padrinos.

4. La finca a que se refiere el hecho anterior fué vendida por Da. Herminia a Don Eduardo González Beltrán en 21 de mayo de 1889 por precio de seiscientos pesos que confesó tener recibidos antes de aquel acto.

5. En 15 de marzo de 1907, siendo ya viudo Don Nicolás Betancourt, otorgó con Don Antonio Zechini un contrato de compraventa de cuatro cuerdas y un cuadro de terrenos, segregadas de otra finca mayor, haciéndose constar en el contrato notarial, que en dicho lote segregado el Sr. Betancourt había construído anteriormente una casa y que el convenio de venta había sido llevado a cabo hacía algún tiempo.

6. Aunque este contrato se redujo a documento público en la fecha antes consignada, sin embargo, la venta se había celebrado mucho antes, cuando aún vivía Da. Herminia Rivera Correa y fué llevado a cabo por los esposos Don Nicolás Betancourt y Da. Herminia Rivera con Don Antonio Zechini y Gracia allá por los años 1889 a 1890, mediante un contrato privado; y desde esa fecha hasta 1892 fué construída en dicho terreno por Betancourt una casa en la que vivió y murió Da. Herminia, siendo agrandada después del fallecimiento de esta señora.

7. Al día siguiente del otorgamiento de la escritura reseñada en el hecho 5º., el demandado Don Nicolás Betancourt vende a Don Francisco del Valle López, otro de los demandados, tres cuerdas de dicha finca, no obstante saber el comprador que la finca de 4¼ cuerdas de donde se segregaba esa porción, había sido comprada por su vendedor durante su matrimonio con Da. Herminia, aún cuando la escritura publicada había sido hecha después de viudo.

8. En 16 de marzo de 1907, en igual día en que compró Don Francisco del Valle, vendió éste por escritura pública dos, de esas tres cuerdas a Don Agustín Rodríguez y después

en 17 de julio de 1907, compró también éste a Don Nicolás Betancourt la cuerda y un cuadro con la casa que le restaba después de la venta que había hecho a del Valle.

Cuando Don Agustín Rodríguez hizo ambas compras sabía que la finca de donde procedían había sido comprada por los esposos Don Nicolás Betancourt y Da. Herminia Rivera, aun cuando el contrato público de Zechini y Betancourt aparecía otorgado siendo éste viudo.

9. Por virtud de esas ventas, las cuatro cuerdas y cuarto han quedado distribuídas así: tres cuerdas y cuarto, del demandado Rodríguez y la otra restante del otro demandado del Valle.

10. Cuando se otorgaron los contratos a que esas ventas se refieren, no estaba inscrita la finca original de cuatro cuerdas y cuarto a favor de Nicolás Betancourt en el registro de la propiedad, pues no fué presentada hasta el año siguiente, 1908.

### FUNDAMENTOS DE DERECHO.

1. El hecho de que una finca adquirida por la esposa con dinero procedente de su herencia paterna fuera vendida por ésta y algún tiempo después comprara otra en unión de su consorte, no es bastante para poder afirmar que esta adquisición fué realizada con sus bienes propios y que tenga el concepto de parafernales, por cuya razón no tiene ese carácter la finca en litigio.

2. Es indudable, por la prueba en este juicio, que la adquisición de las 4¼ cuerdas que se litigan fué hecha por Da. Herminia Rivera y su esposo y tiene que reputarse como perteneciente a la sociedad conyugal, por más que hasta después de muerta dicha señora, el contrato privado que se otorgó cuando la compra-venta, no se elevara a documento público y que en éste se consignara la venta a favor del viudo de dicha señora.

3. Disuelta la sociedad conyugal por muerte de la esposa, el marido no era dueño absoluto de la referida finca y por

consiguiente, no podía disponer libremente de ella mientras no adquiriese su particular dominio mediante liquidación, cuenta y partición del haber social.

4. Aún cuando según el título público de la finca aparece ésta comprada por el viudo, sin embargo, los compradores sabían antes de otorgarse el documento que la adquisición fué hecha mientras fué casado con Da. Herminia Rivera, por lo que no puede considerárseles como terceros y también porque el carácter de tercero, según la ley hipotecaria, es el que adquiere la persona que según el registro aparezca con derecho para ello, y cuando los demandados compraron no estaba inscrita la finca a favor de su vendedor.

Por estas razones debe declararse que pertenece a la sociedad conyugal de Don Nicolás Betancourt y Da. Herminia Rivera la finca litigada, aun cuando del título aparece como comprada por el primero, siendo viudo; que son nulas las ventas hechas por Don Nicolás Betancourt a Francisco del Valle y a Agustín Rodríguez, así como entre estos dos últimos y cancelarse sus inscripciones.

Durante el curso del juicio el demandado Rodríguez que ahora es el apelante, formuló tres excepciones a la presentación de cierta prueba; tomando debida nota de los puntos en un pliego de excepciones que ha sido preparado y certificado en debida forma.

La *primera* excepción según aparece en el pliego es substancialmente como sigue:

"*Primera.* Presentada por el demandante una declaración por deposición, prestada por Antonio Zechini y Veve, el demandado se opuso a que fuera admitida porque el contenido de esa declaración está en oposición con lo establecido por el mismo Don Antonio Zechini y Veve en la escritura de fecha 15 de marzo de 1907, por la que Don Antonio Zechini y Veve, como apoderado de sus hermanas, vende a Don Nicolás Betancourt una finca rústica, la que es objeto de este plieto.

En esa escritura el vendedor no establece que la finca estuviera vendida por documento privado a Betancourt, ni

dice en qué fecha se hiciera esa venta privada de que habla ahora por primera vez en su declaración. En la escritura hay manifestaciones que son de pura referencia; éstas fueron excluídas por la corte; pero en cuanto a la admisión de la declaración la corte la decretó. El abogado de los apelantes prosigue:

"Creemos que esa declaración se ha de entender comprendida en el número 2 del artículo 101 de la Ley de Evidencia, en cuanto en ella se contradice la manifestación hecha en un documento público. En efecto, la escritura dice que las poderdantes de Zechini son las dueñas de la finca, y que tenían convenida la venta con Betancourt; y la declaración dice que Betancourt ya era en esa fecha el dueño de la finca. Entiende esta parte que esa declaración no debió admitirse por la corte.. Y por su admisión tomó excepción la parte."

Debe notarse que el testigo Zechini no es parte en este pleito por lo que el párrafo 2º., artículo 101 de la Ley de Evidencia, no es de aplicación a él, pues según los términos del mismo hace referencia solamente a cuestiones entre partes Y además la declaración no fué presentada como prueba por Nicolás Betancourt, que era un demandado en este caso, sino por el demandante que tenía un interés contrario a éste. Además, la declaración de Zechini debe considerarse más bien como explicativo que contradictorio de las manifestaciones contenidas en la escritura y está fuera de la regla invocada por el apelante. Además, Zechini es solamente apoderado en la escritura de traspaso y no tenía interés personal en la misma. Esta excepción no puede ser por tanto declarada con lugar.

La *segunda* excepción referida es substancialmente como sigue:

"*Segunda.* Al declarar el testigo Felipe Rivera, preguntó el demandante:

"¿Quiénes ocupan el terreno ese en cuestión? ¿Lo ocupa Rodríguez, o quién?"

Testigo: "Siempre mis sobrinas."

A tal pregunta se opuso esta parte y pidió que se borrase del récord, basándose en que no se ha alegado la posesión por parte de las demandantes. La corte admitió la pregunta y su contestación, y este demandado tomó excepción que hoy razona basándola en que la ley de evidencia, en su artículo 34, solamente permite la prueba de las alegaciones esenciales y pertinentes a la cuestión que se ventila. Y la de la posesión por parte de las demandadas, no es alegación de la demanda.''

La objeción formulada a penas puede ser sostenida. Aunque la posesión no se ha alegado de un modo directo que la tenga determinada persona, sin embargo, es un hecho colateral de alguna importancia y la corte debe considerarlo como pertinente a la cuestión en discusión entre las partes. La corte bien podría considerar la posesión como ''un hecho colateral relacionado directamente con la cuestión en disputa y necesario para su verdadera determinación''; y por lo tanto, según su discreción, la pregunta estaba permitida por el mismo estatuto.

La *tercera* excepción que encontramos en el récord es en efecto como sigue:

''*Tercera*. Declarando el testigo Felipe Rivera, dijo a preguntas del demandante:

''Sobre el particular sé que Don Nicolás Betancourt, padre de Herminia y las demás hermanas, allá por el año 1907 u 8, intentó vender a Don Francisco del Valle un terreno que tenía propiedad de sus hijos, que les pertenecía por herencia por haberse comprado con dinero de la madre; me dirigí a del Valle y le manifesté que no comprase dicho terreno y casa porque pertenecía a las hijas de Don Nicolás Betancourt y Don Nicolás no podía venderlo; del Valle me contestó que ya había dado algún dinero a cuenta del contrato, y que Don Antonio Zechini le había manifestado que tenía que entregarle escritura a Don Nicolás y no podía él dejar perder su dinero. Al mes o los dos meses tuve conocimiento de que el negocio persistía y entonces mandé llamar a Don Luis Betancourt y García, hijo de Don Nicolás Betancourt, para que se viese con

el padre a ver si evitábamos el contrato devolviendo la cantidad de dinero que había dado del Valle a Betancourt; Betancourt me dijo que iría donde su principal Don Eduardo González para ver si conseguía el dinero; que González le ofreció darle el dinero y fué donde del Valle y Agustín Rodríguez que ya habían comprado parte del terreno, y ninguno de los dos quiso aceptar la cantidad, manifestando Rodríguez que el terreno no lo vendía y valía mil dollars si lo quería; entonces aconsejé a las sobrinas que buscaran un abogado y empleasen la vía legal para reclamar el derecho de ellas."

Y luego preguntado en contra-interrogatorio, por el abogado del demandante, dijo el testigo lo siguiente:

"Betancourt hijo, fué donde Don Eduardo González que era principal de él para ver si le facilitaba algún dinero, para devolvérselo a del Valle."

Demandado. "¿Cómo sabe Ud. eso?"

Testigo. "Porque me lo dijo Betancourt y entonces le dije, 'pues váyase enseguida donde Rodríguez y del Valle.'"

Demandado. "¿Y entonces él se fué donde Rodríguez y le pasó todo eso?"

Testigo. "Sí señor."

Demandado. "¿Cómo lo sabe?"

Testigo. "Porque me lo dijo al regresar."

Demandado. "En este caso yo pido la exclusión de esta parte del testimonio por ser de referencia."

Juez. "Yo entiendo que Ud. tenía razón de pedirlo antes, pero no después de haberse oído el testimonio y haberle preguntado sobre el mismo.

. Demandado. "Yo insisto en la exclusión de esa parte del testimonio."

Juez. "¿Sobre el particular de Luis Betancourt y García?"

Demandado. "Sí señor."

Juez. "Yo permito que puede, digo, que quede por el motivo que dije antes, porque no se hizo la objeción a tiempo."

"Demandado. "Tomo excepción basado en que hice la objeción cuando el testigo dijo que eso se lo dijo Betancourt al regresar."

Continúa el abogado del demandante exponiendo:

"En efecto, antes de ese momento el testigo había hablado como si por sí mismo y personalmente supiera lo ocurrido y solo a virtud de las preguntas de la defensa del demandado vino a descubrir que todo eso lo sabía porque al regresar se lo había dicho Betancourt. Naturalmente que antes de que el testigo digera esto, no podía la parte que no estaba recibiendo el testigo, digo, el testimonio, y que no venía en él por ese momento nada que indicara la referencia, oponerse basado en que era de referencia la declaración; y sólo cuando por la manifestación del testigo, en las preguntas dijo, en las repreguntas vió cual era el origen de su testimonio, vino la parte a presentar una oposición que antes hubiera sido prematura."

Aparece que esta excepción estuvo bien formulada a pesar de réplica que a ella se hizo por el abogado del apelado en su alegato, que el testigo había dicho en su examen principal que Betancourt así se lo había dicho; porque la moción para eliminar la declaración no fué hecha fuera de tiempo, habiéndose presentado antes de que terminara el examen del testigo. Pero, tal error no era perjudicial, puesto que Betancourt declaró sobre todo lo que Rivera habló por referencia. La eliminación de la declaración de Rivera sobre ese extremo no podía afectar el resultado del juicio, puesto que la declaración de Betancourt quedaba en los autos y era suficiente para probar el hecho que se había incluído en la declaración de referencia.

*Cuarta.* Sostiene además el apelante que la sentencia apelada está en desacuerdo con el lógico resultado de la prueba. No aparece de modo claro que la parcela de terreno en controversia fuese comprada con fondos pertenecientes exclusivamente a la esposa Herminia Rivera, si bien hay circunstancias que indican tal hecho. Como esta cuestión no fué resuelta de modo definitivo en la sentencia de la corte inferior, no es necesario que se resuelva ahora aquí sino que debe quedar abierta para ulterior investigación y determinación judicial si fuere necesario. Por tanto, no examinaremos toda la prueba que ha sido presentada sobre ese punto ni tampoco consideraremos la apreciación que haya sido dada por el juez de la

corte inferior a la prueba que se le presentara sobre el particular. El hecho de que Nicolás Betancourt no tenía derecho o facultad alguna para hacer el traspaso que se trata de anular es suficiente para sostener la sentencia que se ha dictado por la corte inferior, la que no debe modificarse por el referido fundamento.

*Quinta.* El apelante Rodríguez invoca, en su capacidad de tercero, el artículo 1247 del Código Civil y el artículo 23 de la Ley Hipotecaria. Estos preceptos legales no le favorecen porque el mismo documento muestra que con anterioridad al otorgamiento del mismo, la venta del terreno se había consumado y Betancourt ya había construído una casa en dicho terreno. Además, la prueba testifical muestra que Herminia Rivera, esposa de Betancourt había vivido y fallecido en aquella casa, siendo todos estos hechos realmente conocidos por Rodríguez en la época en que trató de comprar el terreno. El no puede alegar su carácter de "tercero," según se define esta palabra en la Ley Española, o lo que la Ley Americana denomina "una compra de buena fe, a título oneroso, sin previo conocimiento de la transacción." Siendo esto así podemos salir del quinto punto contenido en los "fundamentos legales" que han sido presentados en el alegato del apelante.

*Sexto.* Con respecto al sexto punto de los "fundamentos legales" presentados por el apelante es suficiente con decir que él no puede alegar la protección del artículo 34 de la Ley Hipotecaria porque los documentos en cuestión no fueron otorgados por una persona que según el registro tenía derecho para ello, según lo exige el artículo de referencia, puesto que la escritura otorgada a favor de Nicolás Betancourt no estaba inscrita en esa fecha; ni aunque lo hubiera estado, mostraba dicha escritura que la propiedad traspasada era de la exclusiva propiedad de Betancourt, puesto que hacía referencia a la venta anterior hecha durante la vida de su esposo, y a la casa que él ya había construído en el terreno. No existía una inscripción clara ni de clase alguna a favor de Betancourt en la época en que Rodríguez trató de hacer sus compras.

*Séptimo.* En el séptimo "fundamento legal" que alega el apelante para la revocación de la sentencia, el abogado del apelante, con gran tacto y habilidad, establece una distinción sutil entre la nulidad de un contrato y la nulidad de una escritura en la que está contenido un contrato. Es evidente que fué el propósito de la corte inferior decretar la nulidad de las ventas que se habían hecho del terreno por virtud de la escritura de traspaso, puesto que la nulidad estaba fundada en la falta de poder en Betancourt para hacer los traspasos de la finca. Y si no se usaron palabras precisas o adecuadas en la sentencia, esta es una cuestión de la cual puede quejarse el apelante, pues no ha recibido perjuicio por ello. Es posible que esta corte hubiera, previa solicitud y demostración de la necesidad que para ello había por parte de los apelados, corregido la sentencia si hubiera sido necesario hacerlo; pero no habiéndose hecho petición alguna en tal sentido no debe modificarse en manera alguna la forma en que aparece redactada la misma.

De un resumen general del caso encontramos que durante el juicio en la corte inferior quedaron probados los siguientes hechos esenciales:

1. Que el terreno objeto del pleito fué adquirido durante la vida de Doña Herminia Rivera, viuda de Don Nicolás Betancourt, y que en vida de ella fué fabricada la casa en la finca, donde ella murió

2. Que después de la muerte de Doña Herminia Rivera, el viudo tenía a su favor la escritura del terreno, en cuyo documento aparece que la venta se había efectuado anteriormente, y que la casa que también se menciona existía ya en la finca descrita en la demanda.

3. Que estos hechos eran sabidos por los compradores Francisco del Valle y Agustín Rodríguez, por Felipe Rivera y Luis Betancourt, tío carnal y hermano, respectivamente, del padre de los demandantes.

4. Que a pesar de tal conocimiento, se resolvieron a recibir de Nicolás Betancourt, primeramente dos cuerdas de

terreno, después otra cuerda, y finalmente la casa con la cuerda y el cuadro restante.

5. Que los compradores se negaron a recibir el dinero que alegaban habían dado a cuenta, declarando Rodríguez que si ellos querían el terreno le costaría mil dollars.

6. Que, no obstante esto, pasaron tres años desde que se firmaron las escrituras, ni del Valle ni Rodríguez, han entrado en posesión del terreno, el que aún está en posesión de sus verdaderos dueños, los demandantes, que siguen esta acción de nulidad.

7. Que en el registro no aparecía derecho alguno en favor de Nicolás Betancourt ni de Francisco del Valle cuando se otorgaron las escrituras a favor de éste y de Rodríguez, no estando ellos comprendidos en las prescripciones del artículo 34 de la Ley Hipotecaria. Y si el derecho hubiera aparecido, hubiera también aparecido el derecho de los demandantes, puesto que es un hecho probado que la venta tuvo lugar mucho antes de otorgarse la escritura, durante la vida de Doña Herminia Rivera, lo que aparece expresado de modo claro en la propia declaración del vendedor Antonio Zechini, testigo cuya declaración fué atacada fuertemente.

Por lo tanto, aplicando la vigente ley a los hechos de este caso debemos llegar a la conclusión de que la sentencia dictada por la Corte de Distrito de San Juan, Sección 1ª. el día 2 de mayo de 1910, estuvo suficientemente justificada y resuelta correctamente.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociados, Wolf y del Toro.